**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**RENIKA FRANKS**                                                                                 **PLAINTIFF**

**v.**                                                                             **No. 3:22-cv-00194-MPM-RP**

**CITY OF OXFORD, MISSISSIPPI, et al.**                                      **DEFENDANTS**

**OPINION AND ORDER**

This is an employment discrimination and retaliation case. Plaintiff Renika Franks contends that Defendants City of Oxford (the "City") and Oxford Housing Authority (the "OHA"), acting as joint employers, unlawfully failed to promote her because of her race and gender and later eliminated her position in retaliation for complaining to the EEOC. Each defendant seeks summary judgment in its favor. [80, 86]. The motions are fully briefed, and the Court has carefully considered the parties' submissions and the applicable law. Based on all matters of record, this is the decision of the Court.

**BACKGROUND**

Plaintiff Franks began work as a police patrol officer for the City in 2015. [89] at 2.[1] In 2017, at her request, Ms. Franks transferred to the police station at the OHA. *Id.* The OHA encompasses over two hundred low-income housing units. *Id.* at 1. Most of the residents are Black. *Id.* From 2004 until the spring of 2022, the City stationed at least one and as many as five police officers at the OHA. *Id.* at 2. Oxford Police Captain Alan Ivy supervised the officers stationed at the OHA. *Id.* Under City policy, the senior officer stationed at the OHA was considered the officer in charge ("OIC"). *Id.* Any other officers stationed at the OHA reported to the OIC, who reported

---

[1] In considering the motions for summary judgment, the Court accepts as true the version of the facts Plaintiff presents with record support and draws all reasonable inferences in favor of Plaintiff. The Court makes no factual findings at this stage of the case.

to Captain Ivy. *Id.* The record does not suggest that the OIC received any additional compensation for being considered the OIC.

Upon her transfer to the OHA station, Ms. Franks reported to OIC Collins Bryant. *Id.* Officer Bryant left the Oxford Police Department in 2019, leaving Ms. Franks as the only officer stationed at the OHA. *Id.* After approximately seven months, Officer Art Watts was transferred to the OHA. He reported to Ms. Franks, now the OIC. *Id.* Ms. Franks liked her position at the OHA and even declined a request to become police chief in Verona, Mississippi because she did not wish to leave. *Id.* The record reflects that Ms. Franks assisted, encouraged, and mentored tenants and their children at the OHA. *Id.*

In March 2020, Officer Watts transferred away from the OHA, leaving Ms. Franks again the only officer stationed there. *Id.* at 3. In August 2020, Officer Cody Pruitt, a white male, transferred to the OHA. *Id.* at 4. He was selected for the transfer over a Black applicant. Ms. Franks speculates that Officer Pruitt received the transfer because Director Hill and Officer Ivy wanted a white male at the OHA station. She states that Director Hill attempted unsuccessfully to raise Officer Pruitt's compensation after he was transferred to the OHA.

In 2021, a new position for the OHA station was created: the Resident Security and Services Coordinator. The position came with an additional stipend that would bring the compensation of the person in that position to an amount equal to a lieutenant's salary. Officers Franks and Pruitt were the only applicants for the position. In August 2021, an interview committee comprising Captain Ivy, Teasha Sanders, and Andrea Griffin interviewed the two candidates. They recommended to OHA Director Hill that Officer Pruitt be selected. They noted, among other things, that Officer Pruitt had more experience, including more supervisory experience, than Ms.

2

Franks, as well as other useful skills.[2] Mr. Hill recommended Officer Pruitt for the position to Oxford Police Chief McCutchen, who had authority to veto or approve the recommendation subject to final approval by the Oxford Board of Aldermen. Chief McCutchen approved the recommendation, as did the Oxford Board of Aldermen. Officer Cody was offered and accepted the position.

Approximately a month later, Ms. Franks took leave under the FMLA due to medical issues. A few weeks later, her doctor released her to work a light-duty, day-shift only position. In November 2021, she resumed full duty. In December 2021, Ms. Franks filed an EEOC charge based on the City's decision to offer the Resident Security and Services position at the OHA to Officer Pruitt instead of to her.

In the spring of 2022, Chief McCutchen decided to disband the OHA station and assign Officers Franks and Pruitt to other units. [82] at 9. Chief McCutchen believed this would be a better allocation of police resources. In June of 2022, Chief McCutchen met with Officers Franks and Pruitt and offered them a choice of transferring to the patrol, downtown or school units. Officer Franks selected the patrol unit, and Officer Pruitt the downtown unit. *Id.* In July 2022, Officer Pruitt resigned from the Oxford Police Department to take a new job. *Id.*

Ms. Franks contends that the initial August 2020 decision to transfer Officer Pruitt to the OHA station arose out of a desire to have a white male officer at that station. She posits that Director Hill and Captain Ivy wanted Officer Pruitt to supervise the OHA station, and that they created the Resident Security and Services Coordinator position specifically for him. She argues that the interview process was a sham. According to Ms. Franks, the decision to offer the position

---

[2] Officer Pruitt had been a full-time police officer with the City since 2010. The City also points out that Officer Pruitt had been the OIC in the housing and downtown units in the past; had five years as a field training officer; was a defensive tactics instructor; was lead instructor and head of the bike patrol; and was the 2016 Officer of the Year for the Oxford Police Department. [82] at 7.

3

to Officer Pruitt resulted from race and gender discrimination. She argues further that the decision to disband the OHA station altogether in 2022 arose in retaliation for her filing an EEOC charge of discrimination.

Ms. Franks filed this lawsuit on September 9, 2022. The Defendants now seek summary judgment in their favor.

## **LEGAL STANDARDS**

Summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986). A fact is "material" if its resolution in favor of one party may affect the outcome of the case. *See Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 997 (5th Cir. 2022) (citing *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000)). At the summary judgment stage, the court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000). If a moving party shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law, the nonmoving party "must come forward with specific facts showing a genuine factual issue for trial." *Harris ex rel. Harris v. Pontotoc City Sch. Dist.*, 634 F.3d 685, 690 (5th Cir. 2011). "[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.2d 1069, 1075 (5th Cir. 1994). "If the nonmoving party fails to meet this burden, the motion for summary judgment must be granted." *Little*, 37 F.3d at 1075.

## ANALYSIS

    A.    **Failure to Promote**

Under Title VII it is "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 200e-2(a)(1). The plaintiff can prove discrimination through either direct or circumstantial evidence. *Salinas v. AT&T Corp.*, 314 F. App'x 696, 698 (5th Cir. 2009). If the plaintiff can prove Title VII discrimination only through circumstantial evidence, then the *McDonnell Douglas* burden-shifting framework is deployed. *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 892 (1973)). Under *McDonnell Douglas*, the plaintiff has a prima facie case if she demonstrates that she "(1) is a member of a protected class; (2) was qualified for [her] position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or in the case of disparate treatment, that others similarly situated were treated more favorably." *Id.* (quoting *Okeye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 612-13 (5th Cir. 2001).

Under the *McDonnell Douglas* framework, once the plaintiff has established a prima facie case of discrimination, the burden shifts to the defendant-employer to "articulate a legitimate, non-discriminatory reason for its action." *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 402 (5th Cir. 2001) (citing *Shakelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999)). At this stage, the "burden is one of production, not persuasion; it can involve no credibility assessment." *Reeves*, 530 U.S. at 142 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)).

5

In the final shift of the *McDonnell Douglas* framework, after the employer demonstrates evidence of legitimate reasons for termination, the plaintiff-employee is afforded the "opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination." *Reeves*, 530 at 143 (quoting *Tex. Dept. of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)). The question is not whether the employer made a reasonable decision, but rather "whether, viewing all of the evidence in a light most favorable to the plaintiff, a reasonable factfinder could infer discrimination." *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 826 (5th Cir. 2022) (quoting *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000)).

A plaintiff's prima facie case, along with sufficient evidence that the employer's asserted justifications for termination are false, may permit a conclusion that the employer unlawfully discriminated. *Reeves*, 530 U.S. at 148. However, "an employer would be entitled to [summary judgment] if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Id.*

Here, the parties dispute whether the City was the sole employer of Ms. Franks or the City and OHA jointly employed her. The parties also dispute whether the alleged discriminatory acts of Director Hill and Captain Ivy may be imputed to the actual decisionmakers, Chief McCutchen and the Oxford Board of Aldermen. Ultimately, these issues are beside the point, because even assuming the defendants jointly employed Ms. Franks, and even assuming that the alleged discriminatory acts may be imputed to the decisionmakers, Ms. Franks's discrimination claim plainly fails the *McDonnell Douglas* test.

6

No one disputes that Ms. Franks has established a prima facie case of discrimination. She belongs to a protected class; was qualified for the Resident Security and Services position; did not receive the position; and someone outside the protected class received the position. The defense has met its burden of production by submitting admissible evidence that articulates "legitimate, non-discriminatory" reasons for awarding the position to Officer Pruitt, who had more experience, including more supervisory experience; had five years as a field training officer; was a defensive tactics instructor; was lead instructor and head of the bike patrol; and was the 2016 Officer of the Year for the Oxford Police Department. Contending that she was the superior candidate for the position, Ms. Franks notes that Officer Pruitt himself acknowledges having difficulty remembering the names of tenants at the OHA, while she had ongoing relationships with the tenants. At best this bespeaks "only a weak issue of fact as to whether the employer's reason was untrue" and is not enough to survive summary judgment. Ms. Franks has not established a genuine issue as to whether the proffered reason is a pretext for unlawful discrimination. There is simply no basis in the record for a fact-finder to determine that Officer Pruitt received the position over Ms. Franks because of her race or gender. Defendants are entitled to summary judgment in their favor as to Ms. Franks's claims of unlawful race and sex-based discrimination.

**B.     Retaliation**

Title VII makes it unlawful for "an employer to discriminate against any of its employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation using circumstantial evidence, the plaintiff must show that "(1) she engaged in a protected activity; (2) she suffered an adverse employment action; and

7

(3) a causal connection exists between the protected activity and the adverse employment action." *Saketkoo*, 31 F.4th at 1000.

A similar analysis applies to Ms. Franks's claim of unlawful retaliation.[3] It is undisputed that Ms. Franks engaged in a protected activity by filing a charge with the EEOC. Ms. Franks claims that the decision to eliminate the OHA station amounts to an adverse employment action because it required her to transfer to a different position away from the OHA. The Court is not persuaded that the transfer was an adverse employment action. There is no evidence that her rank or pay changed with the transfer or that the transfer entailed unfairly burdensome duties. To the contrary, she was offered a choice of other stations and transferred to the one she selected. Moreover, there is no evidence that filing the EEOC charge had any causal connection to Chief McCutchen's decision to dismantle the OHA station. There is simply no showing of retaliatory animus. Defendants are entitled to summary judgment in their favor on the claim of unlawful retaliation.

## CONCLUSION

For these reasons, the Court finds that summary judgment in favor of each defendant is appropriate. **ACCORDINGLY, IT IS ORDERED** that the Motion for Summary Judgment filed by Defendant City of Oxford [80] is **GRANTED**, and the Motion for Summary Judgment filed by Defendant Oxford Housing Authority [86] is **GRANTED**. All other pending motions are **DISMISSED** as moot.

**SO ORDERED** this the 10th day of June, 2024.

/s/ Michael P. Mills
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**

---

[3] The parties dispute whether Ms. Franks appropriately exhausted her claim of retaliation. Ultimately, the exhaustion issue is beside the point because her retaliation claim plainly fails on the merits in any event.